UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-01015 JVS (DFMx) | Date | July 27, 2017 |
| Title | Ossur hf et al v. Manamed Inc. et al, | | |

Present: The Honorable     James V. Selna

| Evelyn Synagogue | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS)**     **ORDER REGARDING MOTION FOR PRELIMINARY INJUNCTION**

      Plaintiffs Ossur hf and Ossur Americas Inc. (collectively, "Ossur"), moved for a preliminary injunction. Mot., Docket No. 11-1. Defendants Manamed Inc. ("Manamed"), Spartamed LLC ("Spartamed"), John Lasso ("Lasso"), Trevor Theriot ("Theriot"), and Joseph Horton ("Horton") (collectively, "Defendants") opposed. Opp'n, Docket No. 16. Ossur replied. Reply, Docket No. 18.

      For the following reasons, the Court **grants** the motion.

**BACKGROUND**

**I.     Request for Judicial Notice**

      A court may take judicial notice of facts that are readily determinable from accurate sources. Fed. R. Evid. 201(b)(2). Judicial notice is appropriate for (1) documents reflecting official acts of the executive or legislative branches of the United States government, (2) county land records, (3) and proceedings in other courts if those proceedings have a direct relation to the matter at issue. U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992); Rosal v. First Fed. Bank of Cal., 671 F. Supp. 2d 1111, 1121 (N.D. Cal. 2009).

      Here, Ossur requests judicial notice of exhibits 1–12. Docket No. 50-2 ("RJN"). All of these documents fall into appropriate categories for judicial notice. Therefore, the Court **grants** the request.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 17-01015 JVS (DFMx)              Date   July 27, 2017

Title   Ossur hf et al v. Manamed Inc. et al,

## II. Factual Background

Ossur develops, manufactures, and distributes orthopedic medical equipment, including knee braces. Fernandez Decl. ¶ 3. Ossur offers several knee braces under the trademark "Unloader." Id. These include the "Unloader One," "Unloader One Custom," "Unloader FIT," Unloader Custom," "Unloader One Plus," and "Unloader Spirit." Id. Ossur first registered "The Unloader" in 1992. RJN ¶¶ 1–2. It registered the "Unloader One" mark in 2009. Id. ¶¶ 8–9. Ossur registered "Unloader" and "Unloader One" again in 2015. Id. ¶ 12.

Ossur's Unloader braces treat patients suffering from osteoarthritis.[1] In the United States, Ossur owns a company called Team Makena, LLC ("Team Makena"), which distributes the Unloader knee braces. Fernandez Decl. ¶ 7. Ossur alleges that Defendant Lasso served as President and part-owner of Team Makena. Id. ¶ 8; Compl. ¶ 24. Ossur alleges that Lasso breached his fiduciary duties by forming Manamed in conjunction with the other individual defendants. Fernandez Decl. ¶ 8; Compl. ¶ 25. They also formed Defendant Spartamed. Fernandez Decl. ¶ 8; Compl. ¶ 25. In doing so, they allegedly breached fiduciary duties and misappropriated trade secrets. Fernandez Decl. ¶ 10; Compl. ¶ 26. The parties are currently litigating these issues in California Superior Court. Fernandez Decl. ¶ 11; Compl. ¶¶ 26–27.

Manamed allegedly launched a knee brace — called the "Offloader One" — in direct competition with Ossur's Unloader One. Fernandez Decl. ¶ 12; Compl. ¶ 29. According to Ossur, this brace is ineffective and may aggravate knee pain. Romo Decl. ¶¶ 7–13. Furthermore, when Ossur's investigator called and requested an Unloader One from Manamed, Defendant Horton actually sold the investigator an Offloader One brace without comment. Dailey Decl. ¶¶ 5–11.

Ossur sued Defendants for trademark infringement of the various Unloader marks and unfair competition. See generally Compl. Ossur now seeks to enjoin Defendants from using the "Offloader One" mark while this action is pending. Mot.

---

[1] Osteoarthritis is a degenerative joint disease. Romo Decl. ¶ 3. Symptoms include joint pain, stiffness, crackles, swelling, tenderness, joint deformity, and limping. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 17-01015 JVS (DFMx)              Date   July 27, 2017

Title   Ossur hf et al v. Manamed Inc. et al,

## LEGAL STANDARD

On an application for a preliminary injunction, the plaintiff has the burden to establish that (1) the plaintiff is likely to succeed on the merits, (2) the plaintiff is likely to suffer irreparable harm if the preliminary relief is not granted, (3) the balance of equities favors the plaintiff, and (4) the injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 5, 20 (2008).

In the Ninth Circuit, courts may evaluate the Winter factors on a sliding scale: "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134–35 (9th Cir. 2011).

## ANALYSIS

### I.   Evidentiary Objections

Ossur objects to the declaration of Trevor Theriot. Reply at 7. Ossur argues that Theriot's declaration and attached exhibits constitute hearsay and improper expert testimony. The Court **overrules** the hearsay objections because a court may consider hearsay at the preliminary injunction stage. Johnson v. Couturier, 572 F.3d 1067, 1083 (9th Cir. 2009). Furthermore, Theriot does not purport to offer expert testimony; instead, he merely authenticates the attached exhibits. Therefore, the Court also **overrules** Ossur's objections regarding expert testimony.

### II.   Likelihood of Success on the Merits

To show trademark infringement under the Lanham Act, the plaintiff must show that (1) the plaintiff owns a valid trademark; (2) the defendant is using the plaintiff's trademark without the plaintiff's authorization; and (3) the defendant's use of the trademark likely confuses consumers. Applied Info. Scis. Corp. v. eBay, Inc., 511 F.3d 966, 969 (9th Cir. 2007) (citing Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1047, 1053 (9th Cir. 1999)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 17-01015 JVS (DFMx)   Date  July 27, 2017

Title  Ossur hf et al v. Manamed Inc. et al,

### A.  Validity

Here, the parties primarily dispute whether Ossur's trademark is valid. Neither party disputes that Defendants' use of the mark is unauthorized. And at the hearing, Defendants' conceded that this motion turns on the issue of validity, specifically genericness. Ossur argues that the Unloader marks are valid because they have been in use since 1990 and Ossur owns five registered trademarks. Mot. at 8 (citing Fernandez Decl. ¶ 4; RJN ¶¶ 1–13, Exs. 1–11). Defendants argue that the marks are invalid because they are generic. Opp'n at 1–7. They argue that "unloader" is a general type of knee brace; therefore, Unloader One is not a valid mark.

Generic terms refer to "'the genus of which the particular product or service is a species,' *i.e.*, the name of the product or service itself." Advertise.com, Inc. v. AOL Advert., Inc., 616 F.3d 974, 977 (9th Cir. 2010) (quoting Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns Inc., 198 F.3d 1143, 1146 (9th Cir. 1999)). In contrast, "[a] descriptive mark describes the qualities or characteristics of a product." Id. "Generic terms cannot be valid marks subject to trademark protection, whereas a descriptive mark can be valid and protectable if it has acquired 'secondary meaning.'" Id. (quoting Filipino Yellow Pages, 198 F.3d at 1147).

The test for genericness is "whether consumers understand the word to refer only to a particular producer's goods or whether the consumer understands the word to refer to the goods themselves." Id. (quoting Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 929 (9th Cir. 2005)). Courts consider the mark as a whole and even a combination of generic terms may sometimes still create a distinctive mark. Id. at 978. Courts apply the "who-are-you/what-are-you" test. Id. at 977. "A mark answers the buyer's questions 'Who are you?' 'Where do you come from?' 'Who vouches for you?' But the [generic] name of the product answers the question 'What are you?'." Id. at 978 (quoting Filipino Yellow Pages, 198 F.3d at 1147). If the mark primarily describes the product's type — rather than the product's producer — the mark is generic. Filipino Yellow Pages, 198 F.3d at 1147.

For instance, Advertise.com held that "advertising.com" was generic because it only conveyed the type of services offered. 616 F.3d at 977–982. The court held that "[w[hen any online advertising company . . . is asked the question 'what are you' it would be entirely appropriate for the company to respond 'an advertising.com' or 'an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-01015 JVS (DFMx) | Date | July 27, 2017 |
|---|---|---|---|

| Title | Ossur hf et al v. Manamed Inc. et al, |
|---|---|

advertising dot-com.'" Id. at 978. Similarly, Filipino Yellow Pages held that "Filipino Yellow Pages" was generic with respect to telephone directories. 198 F.3d at 1150–51. The court stated that giving the plaintiff "exclusive rights to the term Filipino Yellow Pages" would effectively grant the mark's owner a monopoly because "a competitor could not describe his goods as what they are." Id. at 1151 (internal quotation marks omitted).

Likewise, Genesee Brewing Co., Inc. v. Stroh Brewing Co., affirmed the denial of a preliminary injunction because it found the phrase "Honey Brown" generic as applied to ales. 124 F.3d 137, 148 (2nd Cir. 1997). The court stated that a mark may be "descriptive, suggestive, arbitrary, or fanciful when applied to some products." Id. at 147. Yet, it may nonetheless be generic with respect to other products, particularly those that require the mark to convey their nature to the consumer. Id. Because "brown ale" is a traditional category of ales, "honey brown" merely described a subcategory — "brown ales made with honey." Id. at 149.

In contrast, California Cooler, Inc. v. Loretto Winery, Ltd., affirmed an injunction against the use of "'California Special Cooler' or any other name confusingly similar to 'California Cooler.'" 774 F.2d 1451, 1452 (9th Cir. 1985). The court rejected the defendant's argument that the mark was generic because it included two generic terms. Id. at 1455. The court cited survey evidence that consumers identified the term "California Cooler" as a "brand of wine cooler." Id. at 1456. The court also noted that an alternative and more prominent generic term existed — "wine cooler." Id. at 1455.

Genericness is a factual issue on which (for registered trademarks) the defendant bears the burden. Advertise.com, 616 F.3d at 977. Hence, injunctive relief is not barred when the defendant fails to provide any evidence of consumer perceptions. See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 718 F.2d 327, 330 (9th Cir. 1983), rev'd on other grounds, 469 U.S. 189 (1985). For example, although "park" and "fly" are ordinary words, Park 'N Fly held that the mark was not generic absent "evidence that to the consuming public the primary significance of the term is to denote the service Park 'N Fly offers and not its source . . . ." Id. In contrast, the Ninth Circuit found "surgicenter" generic when the defendant presented 45 exhibits showing that the consumer public only used the term to refer to a surgical center. Surgicenters of Am., Inc. v. Med. Dental Surgeries, Co., 601 F.2d 1011, 1017 (9th Cir. 1979). Evidence of genericness includes the following:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 17-01015 JVS (DFMx)   Date  July 27, 2017

Title  Ossur hf et al v. Manamed Inc. et al,

>  (1) generic use by competitors of the mark that has not been contested by the owner of the mark; (2) generic use of the trademark by the proponent of the trademark; (3) dictionary definitions to determine public usage; (4) generic usage in the media of the trademark, such as in trade journals and newspapers; (5) testimony of persons in the trade; and (6) consumer surveys.

Calista Enterprises Ltd. v. Tenza Trading Ltd., 43 F. Supp. 3d 1099, 1116 (D. Or. 2014).

Here, Defendants argue that Ossur uses Unloader as a genus of knee braces and not as a source identifier. Opp'n at 5. In response, Ossur argues that, even if unloader is a generic term for a category of knee braces, the trademark "Unloader One" as a whole is not. Reply at 3.

Defendants have presented evidence that consumers understand unloader to mean a particular category of knee braces — not Ossur's Unloader line of knee braces specifically. Defendants rely on various medical websites that refer to unloader as one of four types of knee braces, along with "prophylactic," "functional," and "rehabilitative" braces. See, e.g., Theriot Decl. ¶¶5–9, Exs. 2–6, 12, 28. According to these websites, an unloader knee brace is "[a] brace that produces a valgus force on the knee to reduce compressive forces on the medial articular surfaces. It is used to treat patients with deformity and pain caused by osteoarthritis of the knee." Theriot Decl. ¶ 32, Ex. 29; see also id. ¶¶ 13–16, Exs. 10–12 (same). In addition, Defendants show that the National Institutes of Health ("NIH") and the Department of Veterans Affairs ("VA") both use unloader to refer to the type of brace. Id. ¶¶ 17, 22–25 Exs. 14 (NIH study discussing whether patients wear unloader braces generally), 16–22 (VA administrative decisions referring to unloader braces generally). For instance, the VA administrative law judges refer to such a brace as "an unloader brace" — without regard to any specific brand. Finally, Defendants also attached medical studies examining the effect of unloader braces, including several models not made by Ossur. Id. Exs. 15, 24, 25–27. These too refer to such a brace generally as "an unloader brace." Id. In total, this evidence shows that consumers, as well as medical and insurance professionals, use unloader to refer to a type of knee brace rather than a specific firm's knee brace. See Advertise.com, 616 F.3d at 977.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 17-01015 JVS (DFMx   Date   July 27, 2017

Title   Ossur hf et al v. Manamed Inc. et al,

Yet Defendants have not presented any evidence that consumers use Unloader One generically. Defendants' evidence solely concerns the use of unloader to refer to a broad category of knee braces. Although Unloader One may, like "park and fly," appear facially generic, the Court cannot find the term generic without evidence that consumers primarily use the mark to refer to the service it offers (relieving knee pain) and not its source (Ossur). See Park 'N Fly, 718 F.3d at 330. Defendants have not presented consumer surveys or relevant testimony; nor have they shown that trade journals or other competitors use the mark in a generic sense. Instead, Defendants have only shown that consumers may generically use the term "unloader." Defendants cannot meet their burden without more specific evidence that consumers generically use "Unloader One." See id.

At the hearing, Defendants argued that the Court should not consider the composite mark because its individual components — "unloader" and "one" — are generic. But the Ninth Circuit has repeatedly rejected this argument. For instance, California Cooler held that "California Cooler" was not generic, even though neither "California" nor "Cooler" could alone qualify as distinctive. 774 F.2d at 1455. Instead, the court emphasized that the "mark is a composite term and its validity is not judged by an examination of its parts. Rather, the validity of a trademark it to be determined by viewing the trademark as a whole." Id. See also Advertise.com, 616 F.3d at 977 (although court may separately analyze the mark's components, the ultimate inquiry concerns the mark as a whole).

In sum, the Court finds that Defendants have failed to meet their burden to rebut the mark's presumptive validity, and this does not defeat Ossur's prima facie liability showing.

### B.   Likelihood of Confusion

Courts consider eight factors to determine whether there is a likelihood of confusion: (1) strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of the sight, sound and meaning of the marks; (4) evidence of actual confusion; (5) degree to which the marketing channels converge; (6) types of goods and degree of care consumers are likely to exercise when purchasing them; (7) intent of defendants in selecting the infringing mark; and (8) likelihood that the parties will expand their product lines. AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348 (9th Cir. 1979), abrogation in part on other grounds recognized by Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792, 810 n.19 (9th Cir. 2003). This list is neither exhaustive nor

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 17-01015 JVS (DFMx)  Date  July 27, 2017

Title  Ossur hf et al v. Manamed Inc. et al,

exclusive. Id. at 348 n.11. It should be applied flexibly. JL Beverage Co., LLC v. Jim Beam Brands Co., 828 F.3d 1098, 1106 (9th Cir. 2016).

"This eight-factor analysis is pliant, illustrative rather than exhaustive, and best understood as simply providing helpful guideposts." Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1030 (9th Cir. 2010) (citation omitted). Courts should not conduct the analysis in a mechanical fashion, and the importance of each Sleekcraft factor will vary in each particular case. Brookfield, 174 F.3d at 1055 n.6. For instance, in Dreamwerks Production Group, Inc. v. SKG Studio, the court found that three of the Sleekcraft factors—arbitrariness of the mark; similarity of sight, sound, and meaning; and relatedness of goods—were pivotal because "[t]he other five Sleekcraft factors don't provide much insight in this case and thus carry little weight." 142 F.3d 1127, 1130 n.6 (9th Cir. 1998)

Ossur argues that the relevant factors all show a likelihood of consumer confusion. Mot. at 8. Defendants do not offer any opposition with respect to consumer confusion; instead, they focus solely on the issue of genericness. Opp'n at 2–7. The Court analyzes the relevant Sleekcraft factors.[2]

### 1. Strength of the Mark

To determine the strength of a mark, courts examine its (1) conceptual strength and (2) commercial strength. GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1207 (9th Cir. 2000). "The first enquiry focuses on the inherent potential of the term at the time of its first use," and "[t]he second evaluates the actual customer recognition value of the mark at the time registration is sought or at the time the mark is asserted in litigation to prevent another's use." 2 McCarthy on Trademarks and Unfair Competition § 11:83 (4th ed.).

Here, Ossur argues that its mark is both conceptually and commercially strong. Mot. at 8–10.

---

[2] Because the products already compete, the Court does not analyze the likelihood of expansion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-01015 JVS (DFMx) | Date | July 27, 2017 |
| Title | Ossur hf et al v. Manamed Inc. et al, | | |

### i. Conceptual Strength

Conceptual strength is a spectrum. See Brookfield, 174 F.3d at 1058. A mark's conceptual strength "depends largely on the obviousness of its connection to the good or service to which it refers." Id. (quoting Fortune Dynamic, 618 F.3d at 1032–33). Courts classify "a mark along a spectrum of five categories ranging from strongest to weakest: arbitrary, fanciful, suggestive, descriptive, and generic." Id. Arbitrary, fanciful and suggestive marks are inherently distinctive and automatically receive protection because they naturally identify a particular product's source. Quiksilver, Inc. v. Kymsta Corp., 466 F.3d 749, 760 (9th Cir. 2006).

"Categorizing trademarks is necessarily an imperfect science . . . The line between descriptive and suggestive marks is nearly incapable of precise description." To be suggestive, consumers must use their imaginations to understand a mark's significance. Fortune Dynamic, 618 F.3d at 1032–33 (quoting Zobmondo Entm't, LLC v. Falls Media, LLC, 602 F.3d 1108, 1114 (9th Cir. 2010)); Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 631–32 (9th Cir. 2005) (suggestive the marks include "Slickcraft," for boats, and "Air Care," for a service regarding oxygen medical equipment). On the other hand, descriptive marks describe a product's qualities or characteristics; they do not receive protection unless they acquire secondary meaning in the marketplace. Fortune Dynamic, 618 F.3d at 1032–33; see, e.g., Kendall–Jackson Winery v. E. & J. Gallo Winery, 150 F.3d 1042, 1047 n.8 (9th Cir. 1998) ("Honey Roasted" is a descriptive mark for nuts roasted with honey).

Here, Ossur argues that Unloader One is suggestive because it suggests a product quality (unloading stress on relevant body parts), yet the consumer must use some imagination to conclude that the product is a knee brace. Mot. at 9. The Court disagrees: "unloader" literally describes the product's function — unloading weight. Therefore, it is a descriptive mark and has weak conceptual strength.

### ii. Commercial Strength

"Commercial strength is based on 'actual marketplace recognition.'" Network Automation, Inc. v. Advanced Sys. Concepts, Inc., 638 F.3d 1137, 1149 (9th Cir. 2011) (quoting Brookfield, 174 F.3d at 1058). Various factors strengthen a conceptually weak mark; for example, "advertising expenditures can transform a suggestive mark into a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 17-01015 JVS (DFMx)  Date  July 27, 2017

Title  Ossur hf et al v. Manamed Inc. et al,

strong mark." Brookfield, 174 F.3d at 1058. Likewise, the length of exclusive use and public recognition strengthen a mark. Entrepreneur Media, 279 F.3d at 1144.

Here, Ossur shows that Unloader One is commercially strong. Ossur has offered its Unloader line of knee braces for almost 30 years. Fernandez Decl. ¶¶ 4–5. Furthermore, Ossur advertises its Unloader products, including the Unloader One, through traditional media, trade shows, and social media. Hoover Decl. ¶¶ 3–10. Therefore, the mark's longevity and advertising give it commercial strength. See Brookfield, 174 F.3d at 1058; Entrepreneur Media, 279 F.3d at 1144.

Overall, Ossur's commercial activity strengthens its conceptually-weak mark. Therefore, the mark's strength favors Ossur.

### 2.     Proximity or Relatedness of Goods

"Where goods are related or complementary, the danger of consumer confusion is heightened." E. & J. Gallo Winery, 967 F.2d at 1291; see Sleekcraft, 599 F.2d at 348 (concluding that high-speed waterskiing racing boats are sufficiently related to family-oriented recreational boats that the public is likely to be confused as to the source of the boats). "Related goods are those products which would be reasonably thought by the buying public to come from the same source if sold under the same mark." Sleekcraft, 599 F.2d at 348 n.10 (citations and quotations omitted).

Here, this factor strongly favors Ossur because the goods compete in identical markets. Both the "Unloader One" and "Offloader One" are unloader knee braces that treat knee arthritis. See Fernandez Decl. ¶¶ 13, 15.

### 3.     Similarity of Marks

Courts examine "appearance, sound, and meaning" to determine whether marks are similar. JL Beverage, 828 F.3d at 1109. In evaluating these, courts must consider the marks "in their entirety and as they appear in the marketplace." Id. Similarities are more significant than differences. Id.

Here, this factor strongly favors Ossur because the marks are nearly identical. First, the marks differ by only three letters — "un" versus "off." As a result, they appear very

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 17-01015 JVS (DFMx)                Date   July 27, 2017

Title      Ossur hf et al v. Manamed Inc. et al,

similar. Second, with respect to sound, three out of the four syllables are identical. Third, the words have similar meanings. Multiple online thesauruses lists "off-load" as a synonym of "unload." See unload, Thesaurus.com (July 26, 2017), http://www.thesaurus.com/browse/unload; unload:v.1, Merriam-Webster (July 26, 2017), https://www.merriam-webster.com/ thesaurus/unload. Finally, both marks include "one" as their second word.

### 4.     Actual Confusion

Evidence of actual confusion suggests that future confusion is more likely. Sleekcraft, 599 F.2d at 352. But, because it is difficult to gather such evidence, failure to show actual confusion is not dispositive. Pom Wonderful, 775 F.3d at 1131. For the same reason, such evidence is less important at the preliminary injunction stage. Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1073 (9th Cir. 2014).

Here, Ossur presents minimal evidence of actual confusion. Ossur argues that Manamed's sale of an "Offloader One" brace — when Ossur's investigator actually requested an Unloader One — shows actual confusion. See Mot at 11 (citing Dailey Decl. ¶¶ 5–11, Ex. 1). But this goes more toward the Defendants' intent. At the same time, evidence of actual confusion is not necessary — particularly at the preliminary injunction stage. See ABD Ins., 758 F.3d at 1073. Therefore, this factor is neutral.

### 5.     Marketing Channels and Types of Goods

"Convergent marketing channels increase the likelihood of confusion." Sleekcraft, 599 F.2d at 353. To assess convergence, "courts consider whether the parties' customer bases overlap and how the parties advertise and market their products." Pom Wonderful, 775 F.3d at 1130. Courts also examine whether the types of goods overlap from the perspective of a "typical buyer exercising ordinary caution." Sleekcraft, 599 F.2d at 353.

Here, the types of goods overlap because they are both knee braces. Furthermore, given the goods' identical function, both parties will likely sell their braces through similar marketing channels. Therefore, these factors strongly favor Ossur.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 17-01015 JVS (DFMx           Date   July 27, 2017

Title  Ossur hf et al v. Manamed Inc. et al,

### 6. Intent

If the defendant knowingly adopts an infringing mark to deceive the public, courts presume that such confusion will occur. Sleekcraft, 559 F.2d at 354. But courts do not require evidence of intent to determine that confusion is likely. Pom Wonderful, 775 F.3d at 1131. This factor favors the plaintiff "where the alleged infringer adopted his mark with knowledge, actual or constructive, that it was another's trademark." JL Beverage, 828 F.3d at 1111 (quoting Brookfield, 174 F.3d at 1059).

Here this factor strongly favors Ossur because the individual Defendants adopted the "Offloader One" mark shortly after leaving Ossur's employment. Lasso previously served as the president of an Ossur distributor. Fernandez Decl. ¶ 12. Theriot also served as a sales representative for that distributor. Id. ¶ 9. Therefore, they undoubtedly knew of the "Unloader One" mark. Furthermore, Ossur terminated Lasso for breaching his fiduciary duties and forming a competing entity. Id. Therefore, circumstantial evidence strongly suggests that Defendants intended to deceive the public.

In sum, Ossur has shown that a likelihood of confusion exists. Therefore, Ossur meets it burden to show a likelihood of success on the merits.

### III. Irreparable Harm

A plaintiff must demonstrate actual irreparable harm to obtain a preliminary injunction in a trademark case. Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc., 736 F.3d 1239, 1249 (9th Cir. 2013). Irreparable harm is "harm for which there is no adequate legal remedy." Arcsoft, Inc. v. Cyberlink Corp., 153 F. Supp. 3d 1057, 1071 (N.D. Cal. 2015) (quoting Arizona Dream Act Coal. v. Brewer, 757 F.3d 1053, 1068 (9th Cir. 2014)). It is sufficient for a plaintiff to show evidence of a "loss of control over business reputation and damage to goodwill." Id. at 1072 (quoting Herb Reed, 736 F.3d at 1250).

Here, Ossur faces irreparable harm from the potential loss of control over its business reputation. By borrowing Ossur's mark, Defendants impair Ossur's control over its reputation. See Brooklyn Brewery Corp. v. Black Ops Brewing, Inc., 156 F. Supp. 3d 1173, 1185 (E.D. Cal. 2016). This creates the potential for damage to Ossur's reputation. See id. (citing Opticians Ass'n of America v. Independent Opticians of America, 920

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-01015 JVS (DFMx) | Date | July 27, 2017 |
| Title | Ossur hf et al v. Manamed Inc. et al, | | |

F.2d 187, 195 (3d Cir. 1990). Furthermore, Ossur argues that the Offloader One may actually damage patients' knees. Mot. at 20 (citing Romo Decl. ¶¶ 10–12). If true, this would likely damage Ossur's reputation.

Therefore, Ossur meets its burden to demonstrate irreparable harm.

### IV.     Balance of Equities

Here, the balance of equities favors Ossur. As discussed, Ossur will suffer significant reputational risk from Defendants' activities. In contrast, Defendants' product is relatively new, so they will not suffer as much from having to change its trademark. Furthermore, Defendants "cannot complain of the harm that will befall [them] when properly forced to desist from [their] infringing activities." Brooklyn Brewery, 156 F. Supp. 3d at 1186 (quoting Triad Sys. Corp. v. Southeastern Express Co., 64 F.3d 1330, 1338 (9th Cir. 1995)).

### V.     Public Interest

For trademarks, the public interest is the "right not to be deceived or confused." Brooklyn Brewery, 156 F. Supp. at 1186 (quoting CytoSport, Inc. v. Vital Pharm., Inc., 617 F. Supp. 2d 1051, 1081 (E.D. Cal.)), aff'd, 348 F. App'x 288 (9th Cir. 2009)).

As discussed, Ossur has shown that a strong possibility of public confusion exists. Therefore, the public interest favors Ossur.

### CONCLUSION

For the foregoing reasons, the Court **grants** Ossur's motion for a preliminary injunction. After reviewing the merits of the dispute, the Court concludes that a modest bond is appropriate. Fed. R. Civ. P. 65(c). The injunction shall be effective upon the posting of a bond in the amount fo $10,000.

|   |   |       | : | 00 |
|---|---|-------|---|----|
|   | Initials of Preparer | es | | |